# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUBEN GOMEZ,<br><br>                          Plaintiff,<br><br>v.<br><br>MADDEN *et al.*,<br><br>                         Defendants. | Case No.: 16-CV-2316-WQH(WVG)<br><br>**ORDER GRANTING PLAINTIFF'S MOTIONS TO APPOINT COUNSEL**<br><br>**[Doc. Nos. 18 & 23.]** |

Before the Court are Plaintiff Ruben Gomez's motions for appointment of counsel. (Doc. Nos. 18 & 23.) For the reasons set forth below, Plaintiff's motion is GRANTED.

Although "[t]here is no constitutional right to appointed counsel in a § 1983 action," *Rand v. Rowland*, 113 F.3d 1520, 1525 (9th Cir. 1997) (partially overruled en banc on other grounds), districts courts do have discretion pursuant to 28 U.S.C. section 1915(e)(1) to request that an attorney represent indigent civil litigants upon a showing of exceptional circumstances. *See Agyeman v. Corrs. Corp. of Am.*, 390 F.3d 1101, 1103 (9th Cir. 2004). "A finding of the exceptional circumstances of the plaintiff seeking assistance requires at least an evaluation of the likelihood of the plaintiff's success on the merits and an evaluation of the plaintiff's ability to articulate his claims 'in light of the complexity of the legal issues involved.'" *Agyeman*, 390 F.3d at 1103 (quoting *Wilborn v. Escalderon*, 789

F.2d 1328, 1331 (9th Cir. 1986)); *see also Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991).

Additionally, in this District, General Order 596 issued in mid-2011 and adopted a Plan for the Representation of *Pro Se* Litigants in Civil Cases. The Plan allows the Court to "determine whether [a] case is appropriate for the appointment of counsel" based on a non-exhaustive list of illustrative factors that includes the "the potential merit of the claims set forth in the pleadings" and "the degree to which the ends of justice will be served by appointment of counsel, including the extent to which the Court may benefit from the appointment." The illustrative list in GO 596 concludes with a very broad factor: "[A]ny other factors deemed appropriate." Moreover, GO 596 expressly permits the Court to request pro bono counsel appointment when the *pro se* plaintiff has a disability:

> Nothing herein prevents the assigned judge from appointing counsel if it is apparent from the pleadings or other materials before the Court that the pro se civil plaintiff has mental or other disabilities substantially interfering with his or her ability to present the factual and legal claims and making an appropriate application for appointment of counsel.

As if the broad nature of the pro bono counsel appointment process set forth in GO 596 was not already implicitly apparent from the above, the General Order makes this point explicit: "*The provisions of this Plan are to be broadly interpreted in the interests of justice.*" (emphasis in original).

The Court finds that attorney appointment is appropriate and necessary to satisfy the interests of justice in this particular case. As an initial matter, the Court finds Plaintiff's claims have "potential merit." He claims Defendants disregarded signs that the course of treatment they were prescribing (wearing contact lenses) was causing damage to his eyes but nevertheless continued down that path despite warning signs. Based on Plaintiff's allegations of his inability to wear contact lenses and other symptoms, it appears his condition was in its "later stages." *See* Keratoconus Symptoms, Am. Acad. of Ophthalmology, https://www.aao.org/eye-health/diseases/keratoconus-symptoms (last visited Dec. 5, 2018). Symptoms of later stage keratoconus include "more blurry and

distorted vision." *Id.* And when symptoms are severe, a course of treatment includes corneal transplant. *See* Keratoconus Treatment, Am. Acad. of Ophthalmology, https://www.aao.org/eye-health/diseases/keratoconus-treatment (last visited Nov. 2, 2018). Plaintiff's allegations certainly illustrate severe symptoms, and it appears the University of California, San Diego Health performed a right eye corneal transplant in early 2017. (Ex. O to Second Am. Complaint, Doc. No. 14 at 96.) Plaintiff alleges the course of care Defendants followed throughout the years caused him unnecessary pain and damage to his eyes. Taking these allegations as true for the purposes of this motion only, the Court finds Plaintiff has sufficiently shown that his claims potentially have merit.

The Court further finds that exceptional circumstances exist to justify the exercise of its discretion to appoint pro bono counsel in this case. Unlike other prisoners litigating from custody, Plaintiff avers his severely-impaired eyesight and the impending loss of his eyesight prevent him from litigating this case. Up to this point, he has been able to do so with the assistance of a "jailhouse lawyer"—inmate Daniel Manriquez—who has drafted Plaintiff's filings, including Plaintiff's initial motion for attorney appointment. Thus although Plaintiff has been able to articulate his claims to this point, he has only been able to do so with Manriquez's assistance. However, Plaintiff has now been transferred to Folsom State Prison, and Manriquez remains at Centinela prison. Plaintiff has thus lost the very person who was enabling the cogent articulation of his claims. At the Court's request, the Attorney General investigated the circumstances around his transfer, and the AG reported that Plaintiff's transfer was caused by the change in his classification level and his former prison's inability to continue to house him due to his new classification. While unfortunate, the reality now is that Plaintiff has lost the person who was helping—and could continue to help—him prosecute this case. He faces a major obstacle that most

3

16-CV-2316-WQH(WVG)

prisoner plaintiffs do not face: he can barely see.[1] Without the ability to see,[2] the challenges Plaintiff faces fall well outside the realm of routine challenges attendant incarceration. Plaintiff's situation thus presents substantial roadblocks that justify appointment of counsel.

Not only would appointment of counsel further the interests of justice, such appointment would benefit the Court. If Plaintiff does not have the ability to research, draft, or otherwise litigate this case due to his vision issues, he will invariably need to request extensions of deadlines.[3] Indeed, he may need multiple deadline extensions. Or he may not be able to file anything at all. This will impact and lengthen the eventual resolution of this case, which has been pending since 2016 already. In addition to serving

---

[1] Plaintiff suffers from Keratoconus, which is "when the cornea thins out and bulges like a cone. Changing the shape of the cornea brings light rays out of focus. As a result, . . . vision is blurry and distorted, *making daily tasks like reading* or driving *difficult*." Am. Acad. of Ophthalmology, *What is Keratoconus?*, https://www.aao.org/eye-health/diseases/what-is-keratoconus, (last visited Dec. 5, 2018) (emphasis added).

[2] The medical documentation filed as exhibits to the Second Amended Complaint certainly demonstrate that Plaintiff has had longstanding issues with his vision. Additionally, Plaintiff submitted a medical progress report dated May 9, 2018 in which a physician reported that Plaintiff was "still not seeing with" a replacement contact lens that was implanted in his eye because "[u]pon retinoscopy, it was apparent that the lens was overcorrective, leaving [Plaintiff] in a hyperopic state . . . ." (Doc. No. 23 at 3.) The physician continued: "There was slight cortical haziness in the crystalline lense of the right eye, which has been untreated so far, but the left eye has now developed [a] cataract which may be due to the penetrating keratoplasty itself or the continued prednisolone drops used to reduce chances of transplant rejection-which has to be the primary concern." (*Id.*) The Court does not believe Plaintiff is malingering in order to obtain appointed counsel.

[3] The Attorney General explains that inmates at different prisons are able to communicate with each other upon CDCR approval. However, even if approved, the difficulties of such an arrangement make this an impractical solution to Plaintiff's problem. Incarcerated plaintiffs already face enough difficulties litigating cases from prison without the added complexities of communicating with prisoners at a far-off prison. Adding this extra layer of difficulty will unnecessarily complicate and delay this case.

as Plaintiff's eyes and ensuring pleadings are filed in a more timely manner,[4] an attorney would assist the Court in the quicker resolution of this long-pending case.

### IV. CONCLUSION

For the foregoing reasons, because the Court finds this is the rare case where exceptional circumstances exist to warrant the appointment of counsel at this early stage, Plaintiff's motion is GRANTED. Pursuant to S.D. Cal. General Order 596, the Court appoints, Michael Parme, Esq., at 402 W. Broadway, Suite 1850, San Diego, CA 92101 as Pro Bono Counsel for Plaintiff.

Pursuant to S.D. Cal. CivLR 83.3.f.2, Pro Bono Counsel must file, within twenty-one (21) days of this Order, a formal written Notice of Substitution of Attorney signed by both Plaintiff and Pro Bono Counsel. Such substitution will be considered approved by the Court upon its filing, and Pro Bono Counsel will thereafter be considered attorney of record for Plaintiff for all purposes during further proceedings before this Court, *in this matter only*, and at the Court's specific request. *See* CivLR 83.3.f.1, 2.

The Court further DIRECTS the Clerk of the Court to serve Mr. Parme with a copy of this Order at the address listed above upon filing. *See* S.D. Cal. CivLR 83.3.f.2.

**IT IS SO ORDERED.**

DATED: December 28, 2018

_____
Hon. William V. Gallo
United States Magistrate Judge

---

[4] Although the Court anticipates granting pro bono counsel greater time to file documents than ordinarily would be granted (to accommodate counsel's schedule and workload and in appreciation for counsel's generous donation of his time and services), these extended periods would still be shorter than if Plaintiff were to litigate this case himself without the ability to see.