UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUBEN GOMEZ,<br><br>                                    Plaintiff,<br><br>v.<br><br>MADDEN *et al.*,<br><br>                                    Defendants. | Case No.: 16-CV-2316-WQH(WVG)<br><br>**REPORT AND RECOMMENDATION ON DEFENDANT MANI'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>**[Doc. No. 28.]** |

        Pending before the Court is Defendant Mani's motion for partial summary judgment on the Third Amended Complaint's first and third claims.[1] As explained below, this Court RECOMMENDS the motion be GRANTED-IN-PART and DENIED-IN-PART, that judgment be entered in Defendant's favor on Claim One and Claim Three, and that the case be closed given the resulting lack of remaining claims and defendants.

/ / /

/ / /

---

[1] Claim Two was brought solely against now-dismissed defendant Sangha. Claims One and Three are thus the only remaining claims in this case against the only remaining defendant, Defendant Mani.

# I.   STATEMENTS OF FACTS

## A.   Plaintiff's Statement of Facts[2]

In 2007, Plaintiff was incarcerated at Ironwood State Prison ("Ironwood"). While incarcerated at Ironwood, Plaintiff began receiving medical treatment for keratoconus. Keratoconus is the gradual change in the shape of the cornea causing the cornea to become cone-shaped. Plaintiff was prescribed contact lenses. Contact lenses typically aid in resolving minor cases of keratoconus. Severe cases of keratoconus where the corneal shape has changed significantly should not be prescribed contact lenses. The contact lenses began to irritate Plaintiff and cause significant pain. At which point, Plaintiff was diagnosed with a contact lens intolerance.

On July 1, 2008, Plaintiff underwent an Intac Implantation Surgery, which is a corneal insert used to treat keratoconus. Intac Implantation Surgery is not a replacement for corneal replacement surgery. Plaintiff still experienced significant amounts of pain with regard to his vision. On February 10, 2011, Plaintiff was transferred to Centinela State Prison ("Centinela").

On August 12, 2011, Dr. Mani began treating Plaintiff. Dr. Mani noted Plaintiff suffered from corneal abrasions. Dr. Mani continued to prescribe and fit Plaintiff with contact lenses. Dr. Mani treated Plaintiff from 2011-2015. Dr. Mani did not prescribe a special fitting contact lens. Another form of treatment for keratoconus is a corneal transplant. Dr. Mani never prescribed a corneal transplant for Plaintiff despite his continuous complaint of pain and irritation with his eyes. Dr. Mani, throughout years of treatment, never reassessed or conducted additional evaluations of Plaintiff to determine if he would be a candidate for a corneal transplant due to his severe case of keratoconus.

On December 10, 2014, Plaintiff initiated the Patient Inmate Health Care appeal based on the inadequate medical treatment provided at Centinela. Plaintiff filed a second

---

[2] It should be noted that Plaintiff cites to no source outside of his own medical records to support any of the medical statements in his statement of facts.

appeal on February 20, 2015. On September 14, 2015, California Correctional Health Services denied Plaintiff's appeals stating all administrative remedies had been exhausted. On August 26, 2016, Plaintiff received an "Institute Response for First Level HC Appeal" which notes that "[you] have been fitted and refitted for different types of contact lenses and they all appear to irritate your eyes and cause pain."

Plaintiff received treatment at UCSD in 2016 which led to an additional notation of contact lens intolerance and a recommendation of bilateral corneal transplant based on an advanced stage of keratoconus.

**B.    Defendant's Statement of Facts**

    **1.    Plaintiff's Treatment at Ironwood**

Plaintiff is serving a life sentence in the California Department of Corrections with a possibility of parole.

In 2007, while incarcerated at Ironwood State Prison in Blythe, California, Plaintiff began receiving medical treatment for keratoconus which is a gradual change in the shape of the cornea that causes it to become cone-shaped.

Around this time Plaintiff was fitted with contact lenses. His contacts began to bother him and cause pain and irritation. In 2007, Plaintiff was noted to have contact intolerance.

In or about July 2008, Plaintiff received Intac implantation surgery. However, his vision still bothered him and caused him pain. Plaintiff continued to receive treatment for keratoconus while incarcerated at Ironwood from 2007 to 2010.

On or about February 10, 2011, Plaintiff was transferred to Centinela State Prison in El Centro, California.

    **2.    Dr. Mani's Treatment of Plaintiff at California Retina Associates**

Plaintiff first presented to Dr. Mani on August 12, 2011 at CRA's El Centro office. Plaintiff had been referred to CRA by Dr. Ko at Centinela.

At this appointment, Plaintiff complained of "severe" eye pain and swelling in his left eye. Dr. Mani noted Plaintiff had a history of keratoconus in his left eye and had an

Intacs lens placed in his left eye in 2009. Plaintiff also reported he was wearing hard contacts in his left eye.

Plaintiff's visual acuity was 20/40 in his right eye and counting fingers in his left eye. Dr. Mani assessed Plaintiff had corneal abrasions on his left eye and placed a lens and therapeutic bandage on that eye. Dr Mani considered Plaintiff's future need for a corneal transplant but assessed this would not be necessary for a few years. Dr. Mani prescribed Muro (eye drops) and Zymar (antibiotics) and instructed Centinela personnel to move Plaintiff to a bottom bunk, as a ceiling fan could dry out Plaintiff s cornea and rupture his epithelium. Plaintiff was instructed to return in two weeks.

Plaintiff returned to Dr. Mani at CRA's El Centro office on August 26, 2011. He had complaints of blurry vision, a watery left eye, "floaters," and decreased vision in both eyes. Plaintiff's visual acuity was 20/60 in his right eye and 20/100 in his left eye. Dr. Mani assessed that the corneal abrasions in his left eye were improving and told Plaintiff he could start wearing hard contacts again in two weeks. Dr. Mani prescribed Plaintiff Ciprofloxacin (antibiotic) and Muro (eye drops) and instructed him to follow-up in six months.

On March 2, 2012, Plaintiff returned to Dr. Mani at CRA's El Centro office. At that time, Plaintiff's visual acuity was 20/50 in both eyes and his corneal abrasion had healed. Dr. Mani recommended anti-allergy drops to be used in both eyes and follow-up in six months.

On March 9, 2012, Plaintiff was pepper-sprayed in both eyes and presented to Dr. Mani with complaints of burning and foggy vision in his left eye. Plaintiff' vision in his right eye was 20/50 and count fingers and 20/400 with pinhole testing in his left eye. Dr. Mani assessed the pepper spray had caused superficial punctate keratitis. Dr. Mani did not believe this was anything to be alarmed about and believed it would resolve in approximately seven days. Dr. Mani prescribed Plaintiff Econopred (steroid) and erythromycin (antibiotic).

Plaintiff next returned to Dr. Mani on August 31, 2012 at CRA's El Centro office. At this appointment, Plaintiff had complaints of blurry vision in both eyes. Plaintiff's visual

acuity was 20/40 in his right eye and 20/30 in his left. No further treatment was recommended, and Plaintiff was asked to follow up in six months. This was the last time Plaintiff presented to Dr. Mani.

On October 3, 2013, the optometrist at Centinela called CRA and reported Plaintiff had a red eye, which was consistent with a flare-up and normal for patients with keratoconus. Dr. Mani prescribed Plaintiff Cycloplegic and Pred Forte. This was the last time Dr. Mani was involved in Plaintiff's medical care.

## C.    Procedural Background

On September 12, 2016, Plaintiff initiated this action by filing a Complaint pursuant to 42 U.S.C. § 1983 against Raymond Madden and A. Sangha, prison officials at Centinela. On December 14, 2016, the Court *sua sponte* dismissed the Complaint for failing to state a claim pursuant to 25 U.S.C. § 1915(e)(2)(B)(ii) and 1915A(b)(l). The Court granted Plaintiff forty-five days' leave to file an amended pleading in order to correct the pleading deficiencies identified in the Court's Order. Plaintiff failed to comply with the Court's Order, and the Court dismissed the entire action on February 17, 2017.

Nearly a year later, on January 24, 2018, Plaintiff filed a motion to reopen the case, which the Court granted. The Court gave Plaintiff 60 days to file an amended complaint.

On March 26, 2018, Plaintiff filed the First Amended Complaint ("FAC") pursuant to 42 U.S.C. § 1983 against Raymond Madden and A. Sangha, M.D., and adding the Deputy Director of the California Correctional Health Care Services, J. Lewis, and ophthalmologist, Majid Mani, M.D. On May 11, 2018, the Court dismissed the FAC and granted him 45 days to file an amended complaint.

On June 25, 2018, Plaintiff filed the Second Amended Complaint ("SAC"). On August 13, 2018, the Court dismissed Defendants Raymond Madden and J. Lewis for failure to state a claim. The Court determined Plaintiff's Eighth Amendment claims as to defendants Drs. Mani and Sangha were sufficiently pled to survive the "low threshold" for proceeding and ordered the U.S. Marshal's Service to effect service of summons of Plaintiff's SAC upon defendants Drs. Mani and Sangha.

On December 28, 2018, the Court granted Plaintiff's Motion to Appoint Counsel and appointed pro bono counsel to represent him. On March 14, 2019, the Court granted Plaintiff leave to file an amended complaint in lieu of filing an opposition to former co-defendant Sangha's Motion to Dismiss.

On March 20, 2019, Plaintiff filed the Third Amended Complaint ("TAC") containing three claims: (1) Violation of 42 U.S.C. § 1983 under the Eighth and Fourteenth Amendments; (2) violation of 42 U.S.C. § 1983 for failure to train, supervise and manage employees (as to former defendant Sangha only); and (3) negligence and gross negligence.

On April 5, 2019, former defendant Sangha moved to dismiss the TAC against him, and the Court dismissed the TAC with leave to amend Claim One and Claim Two but without leave to amend Claim Three. However, Plaintiff did not amend his claims against Sangha, who remains dismissed from the case.

On November 26, 2019, Defendant filed the instant motion for partial summary judgment, which was fully briefed on June 30, 2020 after the Court granted Plaintiff three extensions of the deadline to file his opposition.

## II.   LEGAL STANDARD

A motion for summary judgment shall be granted where "there is no genuine issue as to any material fact and . . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Prison Legal News v. Lehman*, 397 F.3d 692, 698 (9th Cir. 2005). The moving party bears the initial burden of informing the Court of the basis for its motion and identifying those portions of the file which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The opposing party may not rely solely on conclusory allegations unsupported by factual data. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). The Court must examine the evidence in the light most favorable to the nonmoving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654 (1962).

When the nonmoving party bears the burden of proving the claim or defense at trial, "the moving party can meet its burden in two ways: (1) by presenting evidence to negate

an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial." *FTC v. Omics Grp.*, 374 F. Supp. 3d 994, 1008 (D. Nev. 2019) (citing *Celotex Corp.*, 477 U.S. at 323-24)

Any doubt as to the existence of any issue of material fact requires denial of the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Even in the absence of a factual dispute, a district court has the power to "deny summary judgment in a case where there is reason to believe that the better course would be to proceed to a full trial." *Id.*

## III.   DISCUSSION

**A.   Because There is No Genuine Dispute of Material Fact Whether Defendant Violated Plaintiff's Constitutional Right to Medical Care, Defendant is Entitled to Summary Judgment on Claim One (Section V of MSJ)**

Defendant Mani moves for summary judgment on Plaintiff's first claim brought under the theory that Defendant violated Plaintiff's Eighth Amendment rights through alleged deliberate indifference to Plaintiff's serious medical needs. Defendant has proffered the sworn affidavit of a medical expert as evidence that he met the applicable standard of care in treating Plaintiff. In opposition, Plaintiff has not submitted medical expert evidence or moved to disqualify Defendant's expert witness under Federal Rule of Civil Procedure 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). Accordingly, based on the uncontroverted evidence in Defendant's favor, the Court should grant his MSJ as to the first claim.

### 1.   Applicable Law

### b.   Deliberate Indifference to Serious Medical Needs

The government has an "obligation to provide medical care for those whom it is punishing by incarceration," and failure to meet that obligation can constitute an Eighth Amendment violation cognizable under section 1983. *Estelle v. Gamble*, 429 U.S. 97, 103-05 (1976). In order to prevail on an Eighth Amendment claim for inadequate medical care, a plaintiff must show "deliberate indifference" to his "serious medical needs." *Id.* at 104.

This includes "both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012), overruled in part on other grounds by *Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014).

To meet the objective element of the standard, a plaintiff must demonstrate the existence of a serious medical need. *Estelle*, 429 U.S. at 104. Such a need exists if failure to treat the injury or condition "could result in further significant injury" or cause "the unnecessary and wanton infliction of pain." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled in part on other grounds by *WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc)) (internal quotations omitted). Indications that a plaintiff has a serious medical need include "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *McGuckin*, 974 F.2d at 1059-60.

A government official is deliberately indifferent under the subjective element of the test only if the official "knows of and disregards an excessive risk to inmate health and safety." *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting *Gibson v. Cnty. of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002)) (internal quotations omitted). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. Deliberate indifference "may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988).

This "requires more than ordinary lack of due care." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)) (internal quotation mark omitted). In order to prevail on a claim involving choices between alternative courses of treatment, a plaintiff must show that the course of treatment the doctor chose was

medically unacceptable under the circumstances and that he chose this course in conscious disregard of an excessive risk to the plaintiff's health. *Toguchi*, 391 F.3d at 1058; *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996) (citing *Farmer*, 511 U.S. at 837).

### b.    Requirement of Opposing Evidence

In response to evidence submitted in support of a moving party's MSJ, the non-moving "party must go beyond the pleadings and by its own evidence 'set forth specific facts showing that there is a genuine issue for trial.'" *Far Out Prods. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001) (quoting Fed. R. Civ. P. 56(e)); *see also Jespersen v. Harrah's Operating Co.*, 392 F.3d 1076, 1079 (9th Cir. 2004) ("Once the moving party has met its initial burden, the non-moving party must produce some evidence showing that there remains a genuine issue of material fact for trial.") (citation omitted); *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (noting that the non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment").

In the context of the legal standard for summary judgment motions, "[a]n issue is 'genuine' only where there is sufficient evidence for a reasonable fact finder to find for the non-moving party." *Jespersen*, 392 F.3d at 1079. If the non-moving party does not "make this showing, the moving party is entitled to judgment as a matter of law." *Far Out Prods.*, 247 F.3d at 997.

### 2.    Discussion

Defendant contends Plaintiff cannot meet the second element of the deliberate indifference claim because there is no genuine dispute of material fact that Defendant was even minimally negligent in his care and treatment of Plaintiff, much less that Defendant was deliberately indifferent to his serious medical condition. (Doc. No. 48-1 at 15.)[3] In support of this contention, Defendant proffers a sworn affidavit of expert witness, Dr. John Bokosky, who is a board-certified ophthalmologist licensed in California. (Doc. No. 48-3

---

[3] All citations to documents filed on the CM/ECF docket refer to the electronic page numbers generated by the CM/ECF system, not to the document's original pagination.

9

at 28-33.) After reviewing the medical record in this case, Dr. Bokosky opines that "the care Dr. Mani provided to Mr. Gomez [between August 2011 and October 2013] was at all times appropriate and within the standard of care" based on the following:

> b) Dr. Mani's recommendation to treat Mr. Gomez's keratoconus with contact[s] was appropriate and within the standard of care. Keratoconus is common eye disease in which the normally round cornea thins and begins to bulge into a cone-like shape. Contacts are the primary treatment for keratoconus as contacts flatten the patient's cornea and permit[] the patient to see. Abrasions are a known side effect of contacts, and when abrasions occur, the patient is routinely referred for a contact refitting. In the present case, Mr. Gomez developed abrasions and Dr. Mani appropriately referred the patient for contact refitting. Of note, Mr. Gomez's abrasions started improving in August 2011 and had resolved by March 2, 2017.

> c) When Dr. Mani first evaluated the patient on August 12, 2011, he appropriately considered whether to refer the patient for a corneal transplant. It was appropriate and within the standard of care for Dr. Mani to decide against referring Mr. Gomez for a corneal transplant at that time as corneal transplants are a last resort for keratoconus and an ophthalmologist should exhaust all treatment options before recommending a cornea transplant.

(*Id.* ¶¶ 7(b)-(c).) Dr. Bokosky concludes that "to a reasonable degree of certainty the care and treatment Dr. Mani provided to Mr. Gomez did not negligently cause or contribute to [Mr. Gomez's] alleged damages." (*Id.* ¶ 8.)

In opposition, Plaintiff argues that "[d]espite medical records clearly indicating Mr. Gomez's contact lens intolerance, Dr. Mani prescribed plaintiff hard contact lenses throughout his course of treatment of Mr. Gomez" and as a result "Mr. Gomez's condition progressed severely from the time of diagnosis through Dr. Mani's treatment of Mr. Gomez." (Doc. No. 60 at 9.) And although "Dr. Mani noted he did not believe Mr. Gomez ha[d] progressed to the stage of requiring a corneal transplant[, Dr. Mani] failed to reconsider the option throughout the course of his treatment." (*Id.*) Thus, "[t]hroughout the roughly two years Mr. Gomez was treated by Dr. Mani, Plaintiff was not prescribed specialized contacts and was not reevaluated for a corneal transplant surgery despite the

continued degeneration of his eyesight." (*Id.* at 10.) Plaintiff thus disputes Dr. Bokosky's conclusions and Defendant's statements of undisputed facts.

The problem with Plaintiff's contentions is the lack of evidentiary support for his arguments. Given that the complex medical subject matter at the heart of this case is beyond the scope of a layperson's ability to explain, Plaintiff was required to proffer contrary evidence to rebut Dr. Bokosky's expert opinions. *See United States v. Urena*, 659 F.3d 903, 908 (9th Cir. 2011) (citing *Wills v. Amerada Hess Corp.*, 379 F.3d 32, 46 (2d Cir. 2004) (holding that, where the cause of an injury would not be obvious to a lay juror, expert testimony is required)). But he did not present competent contrary evidence and cited only to his own medical records (*see* Doc. No. 60-1 at ¶¶ 26, 28-30; Doc. No. 60-2 at 1-2), which on their own do not rebut Dr. Bokosky's opinions. Nor did Plaintiff move to strike Dr. Bokosky's opinions as unreliable and unsupported pursuant to Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). Thus, without contrary evidence, Dr. Bokosky's unchallenged expert opinion stands as the sole piece of evidence as to the standard of care in this case and Defendant's adherence to that standard in treating Plaintiff. And without more, Plaintiff's arguments about Defendant's violation of a standard of care in the ophthalmology filed are simply his own layperson conjecture.[4] Thus there is no admissible competent evidence to support his contentions that his vision deteriorated as a result of the contact lenses, that Defendant should have ordered a cornea transplant, or that Defendant should have done anything differently during the time Plaintiff was in his care.

Although the Court is obligated to examine the evidence in the light most favorable to Plaintiff, the nonmoving party, where, as here, there is a lack of evidence in opposition to Defendant's expert witness evidence, there simply is no weighing to be done. *Carson v.*

---

[4] It should be noted that Plaintiff contends Defendant should have reviewed Plaintiff's prior medical records that in 2007 noted a contact lens intolerance. However, Dr. Bokosky considered this in rendering his ultimate opinions given that he reviewed all of Plaintiff's medical records since at least 2007. (Doc. No. 48-3 ¶ 6.)

*Depuy Spine, Inc.*, 365 F. App'x 812, 814 (9th Cir. 2010) (citing *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001)) (stating that a "party opposing summary judgment may not simply question the credibility of the movant to foreclose summary judgment."); *see Memory Integrity, LLC v. Intel Corp.*, 178 F. Supp. 3d 1022, 1034 (D. Or. 2016) ("If the expert's testimony will be unopposed at trial, nothing is accomplished by allowing the case to be tried when a party is unable to obtain an affidavit to rebut an expert's testimony.") (quoting Edward J. Brunet *et al.*, *Summary Judgment — Federal Law and Practice* § 8.11, at 345 (2014)); *see also Bender-Wishart v. United States*, No. 17CV923-SB, 2020 U.S. Dist. LEXIS 62321, at *9-11 (D. Or. Jan. 30, 2020) (recommending granting the plaintiff's MSJ where, in response to the plaintiff's expert evidence, defendant doctor submitted his own declaration—but not independent expert evidence—that he did not deviate from the standard of care); *Langer v. Stern*, No. CV 19-2151-AB(JEMx), 2019 U.S. Dist. LEXIS 227120, at *5-10 (C.D. Cal. Nov. 25, 2019) (granting the defendant's expert-supported MSJ where the plaintiff submitted no counter expert evidence).

In order to defeat Defendant's motion for summary judgment, Plaintiff must "produce at least some significant probative evidence tending to [show]," *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Assoc.*, 809 F.2d 626, 630 (9th Cir. 1987), that Defendant's actions, or failures to act, were "in conscious disregard of an excessive risk to plaintiff's health," *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). Plaintiff has not done so here and thus cannot establish at trial that the course of treatment Defendant chose was medically unacceptable under the circumstances and that he chose this course in conscious disregard of an excessive risk to Plaintiff's health. To the contrary, the only evidence before the Court establishes Defendant's adherence to the standard of care and the absence of negligence—and *a fortiori* deliberate indifference—in treating Plaintiff. Consequently, this Court recommends granting Defendant's MSJ as to the first claim and entering judgment accordingly.

16-CV-2316-WQH(WVG)

**B.    Claim Three Fails for Failure to File a Government Claim (Section VI of MSJ)**

Defendant argues that California Government Code section 945.4 requires that a plaintiff suing a public entity for damages must have presented the claim to the public entity within the statutory timeframe prior to bringing suit. The TAC contains no factual indication that Plaintiff properly presented the claim against Defendant. As such, Defendant argues he is entitled to summary judgment on Claim Three for negligence and gross negligence. Defendant contends it is not proper to summarily adjudicate a claim subject to the Government Claims Act and asks the Court to dismiss the claim without prejudice rather than grant this portion of the MSJ.

This Court recommends granting Defendant's MSJ and entering judgment on Claim Three for failure to comply with the California Government Claims Act.

**1.    Applicable Law: California Government Claims Act**

The California Government Claims Act requires a person asserting a tort claim against a California governmental entity or employee to present his claim to the California Victim Compensation and Government Claims Board before filing an action for damages against that entity or employee. *See* Cal. Gov't Code §§ 905.2, 911.2, 945.4, 950-950.2. The policy behind the claims presentation requirement "is to afford prompt notice to public entities[,]" which "permits early investigation and evaluation of the claim and informed fiscal planning in light of prospective liabilities." *Cal. Rest. Mgmt. Sys. v. City of San Diego*, 126 Cal. Rptr. 3d 160, 166 (Cal. Ct. App. 2011). The Act has strict time limits for both presenting a claim to the Claims Board and filing a court action after the Claims Board rejects the claim.

First, a person must present his tort claim to the Claims Board within six months of the accrual of the claim. Cal. Gov't Code § 911.2. Thereafter, any suit based on the claim presented to the Claims Board must be commenced within six months from the date the Claims Board's written notice of rejection is deposited in the mail. Cal. Gov't Code § 945.6(a)(1); *Clarke v. Upton*, 703 F. Supp. 2d 1037, 1043 (E.D. Cal. 2010).

Compliance with the Government Claims Act is an element of a state claim, *State of Cal. v. Sup. Ct.*, 90 P.3d 116, 120 (Cal. 2004); compliance is required, *Mangold v. Cal. Public Utilities Com'n*, 67 F.3d 1470, 1477 (9th Cir.1995); and "failure to file a claim is fatal to a cause of action," *Hacienda La Puente Unified School Dist. of L.A. v. Honig*, 976 F.2d 487, 495 (9th Cir. 1992); *see also State of Cal. v. Superior Court (Bodde)*, 90 P.3d 116, 119 (Cal. 2004) ("[F]ailure to timely present a claim for money or damages to a public entity bars a plaintiff from filing a lawsuit against that entity.").

"Even if the public entity has actual knowledge of facts that might support a claim, the claims statutes still must be satisfied." *DiCampli-Mintz v. Cty. of Santa Clara*, 289 P.3d 884, 888 (Cal. 2012). "Timely claim presentation is not merely a procedural requirement, but is . . . a condition precedent to plaintiff's maintaining an action against defendant, *and thus an element of the plaintiff's cause of action*." *Shirk v. Vista Unified Sch. Dist.*, 164 P.3d 630, 634 (Cal. 2007) (emphasis added; internal quotations and citations omitted); *see also DiCampli-Mintz*, 289 P.3d at 888.

### 2.   Discussion

This Court has previously formally addressed whether Plaintiff has alleged compliance with the Government Claims Act. On August 5, 2019, this Court issued a Report and Recommendation on now-dismissed defendant Sangha's motion to dismiss on this very issue. *See Gomez v. Madden*, No. 16CV2316-WQH(WVG), 2019 WL 3554945, 2019 U.S. Dist. LEXIS 130747 (S.D. Cal. Aug. 5, 2019). At that time, the operative complaint was the same as it is now—the TAC—and Sangha sought dismissal because the TAC had not alleged compliance or excuse for noncompliance with the Act. Finding that Sangha was correct, this Court recommended that the TAC's Claim Three against Sangha be dismissed without leave to amend because the claim presentation period had lapsed and Plaintiff could not allege he did not know his alleged injuries were caused by a public employee. *Gomez*, 2019 U.S. Dist. LEXIS 130747, at *20-21. The Honorable William Q. Hayes agreed and dismissed Claim Three against Sangha with prejudice and without leave to amend. *Gomez v. Sangha*, No. 16CV2316-WQH(WVG), 2019 WL 4686937, 2019 U.S.

Dist. LEXIS 166008, at *10 (S.D. Cal. Sep. 26, 2019). Defendant Mani[5] now seeks summary adjudication for the same reasons that the same claim against former defendant Sangha was dismissed without leave to amend.

Plaintiff's TAC contains no allegations that he submitted a timely claim pursuant to the Government Claims Act. Nor does the TAC allege that Plaintiff applied to present an untimely claim, based on the statutory exception described in section 950.4. As Plaintiff points out in both the TAC and his opposition to Defendant's MSJ, he did pursue and exhaust the prison's administrative remedies available to him as of September 14, 2015. However, while allegations relating to the exhaustion of administrative claims are relevant to Plaintiff's section 1983 claims, they are not relevant to his negligence claim brought under state law. Consequently, Plaintiff must comply with the Government Claims Act as to his negligence claim. Because Plaintiff's claim accrued sometime in 2015, the statutory timeframes for presenting a claim (six months after claim accrual) or applying to present an untimely claim (one year after claim accrual) have lapsed. Cal. Gov. Code §§ 911.2, 911.4.

The statutory exception that would allow Plaintiff to present a government claim after these periods lapsed would require Plaintiff to plead and prove "that he did not know or have reason to know" within the statutory timeframe that "the injury he alleges was caused by the act or omission of a public entity or employee." Cal. Gov. Code § 950.4. However, Plaintiff filed his initial complaint on September 12, 2016, within the one-year period to apply to present an untimely claim. That complaint chronicled the basis for this

---

[5] As an initial matter, unlike Dr. Sangha, who worked directly for the CDCR, it appears Dr. Mani is a private doctor who works for California Retina Associates Surgery Center of California, which appears to be a private entity that was contracted to perform advanced eye care for State prisoners like Plaintiff. *See* https://www.retinadrs.com/our-doctors/dr-majid-mani/ (last visited July 22, 2020). That being said, the applicability of the Government Claims Act as a threshold matter is not an issue here given that Plaintiff has pled and thus conceded that Dr. Mani is "employed by the California Department of Corrections and Rehabilitations." (TAC, Doc. No. 38 ¶ 10.)

lawsuit, which has remained the same throughout the amended complaints. As a result, he cannot argue that he was unaware of the injury that gave rise to the negligence claim until after the claim presentation deadlines expired. Accordingly, Plaintiff's government claim is untimely, and Defendant is entitled to summary judgment on Claim Three on this basis.

Although Plaintiff contends he exhausted his administrative remedies by filing inmate appeals with the prison (Doc. No. 60 at 12:15-22; *see also* Doc. Nos. 60-9, 60-10, 62-1 at 1-3), the inmate appeal form in Exhibit E does not contain complaints about Dr. Mani's alleged conduct in this case. Rather, in Exhibit E, Plaintiff complains he has not received his prescribed contact lenses and asks that they be delivered to him. (Doc. No. 62-1 at 2 ("I need to receive my recommended contact lenses because [it's] been long enough.").) Thus, rather than complaining about being prescribed contact lenses, he complains that he has not received them quickly enough. At the second-level appeal of this grievance, it was determined that the contact lenses Plaintiff was set to receive continued to be "on order" and that he would be scheduled for the next available optometric clinic once the lenses arrived. (Doc. No. 60-9 at 3.) Then, at the director's level review, no further action was taken since Plaintiff by that point had a pending appointment for fitting of the contact lenses. (Doc. No. 60-10 at 2-3.) These appeals do not evidence compliance with the Government Claims Act with respect to the allegations in this case since the appeals involved the untimely delivery of prescribed contact lenses rather than Dr. Mani's alleged failure to order a corneal transplant or Plaintiff's displeasure with the contact lenses.

Plaintiff also contends that "Defendant improperly raised this issue on summary judgment" and "requests the court simply dismiss the claim without prejudice rather than decide this claim on the merits." (Doc. No. 60 at 13.) As an initial matter, Plaintiff cites no authority within the Ninth Circuit or any California State authority for the proposition that claims subject to the Government Claims Act are not properly subject to summary adjudication. To the contrary, courts in the Ninth Circuit and California have granted summary judgment motions on this basis. *See, e.g.*, *Garedakis v. Brentwood Union Sch. Dist.*, 183 F. Supp. 3d 1032, 1039-40 (N.D. Cal. 2016); *Quiroz v. Horel*, 85 F. Supp. 3d

1115, 1150-51 (N.D. Cal. 2015); *Hupp v. San Diego Cty.*, No. 12CV492-GPC(RBB), 2014 U.S. Dist. LEXIS 99825, at *18-20 (S.D. Cal. July 21, 2014); *Gumm v. Cty. of Stanislaus*, No. F076713, 2020 Cal. App. Unpub. LEXIS 1419, at *10-15 (Mar. 2, 2020 Cal. Ct. App.); *Tiggs v. Bd. of Trs. of the Cal. State Univ.*, No. H043764, 2018 Cal. App. Unpub. LEXIS 6197, at *20 (Sept. 10, 2018 Cal. Ct. App.). Moreover, this Court sees no reason why summary judgment cannot be granted on this basis. After all, if timely presentation of a claim *is an element of the claim*, the claim is amenable to summary adjudication if there is no dispute of material fact regarding the plaintiff's timely presentation of the claim.

Here, Plaintiff does not argue or present any evidence to counter Defendant's contention that Claim Three was not timely presented. As a result, because Plaintiff cannot meet this element of Claim Three, summary adjudication *is* appropriate.[6] Accordingly, this Court recommends granting Defendant's MSJ as to Claim Three for lack of compliance with the California Government Claims Act.

## C.   Claim Three (Negligence and Gross Negligence) and Expert Testimony on the Standard of Care (Section VII of MSJ)

Defendant also contends Claim Three fails for the additional reason that expert testimony establishes he did not violate the standard of care in treating Plaintiff. However, given the discussion and recommendation immediately above, this argument is moot. Nonetheless, should the Court address the merits of this argument, Defendant is entitled to summary judgment on this claim because Plaintiff cannot establish his negligence or gross negligence claim under California law without affirmative expert evidence on the standard of care in such cases. *Massey v. Mercy Med. Ctr. Redding*, 103 Cal. Rptr. 3d 209, 213 (Cal. Ct. App. 2009) ("The standard of care against which the acts of a medical practitioner . . . are to be measured is a matter peculiarly within the knowledge of experts; it presents the

---

[6] In any event, even if the Court were to dismiss this claim as Plaintiff requests, it would necessarily be without leave to amend for the same reasons that leave to amend was denied as to former defendant Sangha. (*See* Doc. No. 44 at 11:22-13:17; Doc. No. 47 at 7:3.)

basic issue in a malpractice action and can only be proved by their testimony . . . .") (citation and internal quotations omitted); *see Scott v. C. R. Bard, Inc.*, 180 Cal. Rptr. 3d 479, 498 (Cal. Ct. App. 2014) ("[T]he medical standard of care is more specific than the general standard of care and, unlike general negligence, requires expert testimony. Accordingly, it is more difficult to prove a defendant fell below the medical standard of care than it is to prove a defendant fell below the general standard of care.").[7] Accordingly, Defendant is entitled to summary judgment on Claim Three for this additional reason.

**D.      Plaintiff's Prayer for Punitive Damages (Section VIII of MSJ)**

Given the foregoing recommendations to grant Defendant's MSJ as to both remaining claims against Defendant, the question of Plaintiff's prayer for punitive damages is moot. However, should the Court reach the merits of this argument, Defendant is entitled to summary judgment here as well.

**1.      Defendant Did Not Act with Malicious or Evil Intent or Malicious Disregard of Plaintiff's Federally Protected Rights**

Defendant contends Plaintiff is foreclosed from collecting punitive damages because the uncontroverted evidence establishes that Defendant did not act with the requisite mens rea required for a punitive damages award.

A section 1983 plaintiff may recover punitive damages against an official if the official acted with malicious or evil intent or in callous disregard of a plaintiff's federally protected rights. *Smith v. Wade*, 461 U.S. 30, 56 (1983). A plaintiff must show such conduct by a preponderance of the evidence. *See Dang v. Cross*, 422 F.3d 800, 807-08 (9th Cir. 2005); *see also Smith v. City of Oakland*, 538 F. Supp.2d 1217, 1246 (N.D. Cal. 2008). "Conduct is in reckless disregard of the plaintiff's rights if, under the circumstances, it reflects complete indifference to the plaintiff's safety or rights, or if the defendant acts in

---

[7] This is not the "rare" case where layperson evidence is sufficient. *See generally Ewing v. Northridge Hosp. Med. Ctr.*, 16 Cal. Rptr. 3d 591, 600-01 (Cal. Ct. App. 2004) (explaining the "common knowledge" exception to the expert witness requirement in California medical malpractice cases).

the face of a perceived risk that its actions will violate the plaintiff's rights under federal law." Model Civ. Jury Inst. 9th Cir. 5.5; *see Dang*, 422 F.3d at 807. Similarly, to obtain punitive damages under California law, a plaintiff must show by clear and convincing evidence that a defendant acted with malice, fraud, or oppression. Cal. Civ. Code § 3294; *Roby v. McKesson Corp.*, 219 P.3d 749, 765 (Cal. 2009).

Here, there is no triable issue of material fact as to whether Defendant acted with the requisite mental state to entitle Plaintiff to punitive damages. Given Dr. Bokosky's expert declaration affirming Defendant's adherence to the accepted standard of care for Plaintiff's medical condition, the only evidence in this case establishes that Defendant did not act with malicious or evil intent, fraud, oppression, or in callous disregard of a plaintiff's federally protected rights. Accordingly, Defendant is entitled to summary judgment in his favor on Plaintiff's prayer for punitive damages on this basis.

### 2. Plaintiff Need Not Comply with California Code of Civil Procedure Section 425.13 to Pursue Punitive Damages in Federal Court

Defendant contends he is entitled to judgment on Plaintiff's prayer for punitive damages because Plaintiff did not comply with California Code of Civil Procedure Section 425.13, which requires a court order before a plaintiff can seek punitive damages from a healthcare provider.[8] (Doc. No. 48-1 at 22:1-15.) Although it is undisputed that Plaintiff did not seek such a court order, that is beside the point since section 425.13 does not apply in federal court.

Although the Ninth Circuit has not addressed the applicability of this statute in federal court, a sister court has done so in a published order that has been followed by

---

[8] California Code of Civil Procedure section 425.13(a) states in relevant part:

> In any action for damages arising out of the professional negligence of a health care provider, no claim for punitive damages shall be included in a complaint or other pleading unless the court enters an order allowing an amended pleading that includes a claim for punitive damages to be filed.

district courts across California. *See generally Jackson v. E. Bay Hosp.*, 980 F. Supp. 1341 (N.D. Cal. 1997). And although California district courts are split on the issue, most have resolved the issue as the district court in *Jackson* did. *Scalia v. Cty. of Kern*, 308 F. Supp. 3d 1064, 1091 (E.D. Cal. 2018) (noting split and following *Jackson*). In *Jackson*, the court found the requirements of section 425.13 were merely procedural—not substantive—and were thus not applicable in federal court. *Jackson*, 980 F. Supp. at 1353. Accordingly, the court declined to strike the plaintiff's punitive damages claims for failure to comply with that section. *Id.*

California district courts have largely followed Jackson in published orders. *See, e.g.*, *Scalia*, 980 F. Supp. 3d at 1091; *Estate of Prasad v. Cty. of Sutter*, 958 F. Supp. 2d 1101, 1120-21 (E.D. Cal. 2013) (noting split and following *Jackson*); *George v. Sonoma Cty. Sheriff's Dept.*, 732 F. Supp. 2d 922, 951 (N.D. Cal. 2010); *see also Steel v. City of San Diego*, 726 F. Supp. 2d 1172, 1182 (S.D. Cal. 2010) (citing *Jackson* with approval). And in this District, *Jackson* has been followed in unpublished orders as well. *See, e.g.*, *Ortegoza v. Kho*, No. 12CV529-L(KSC), 2013 WL 2147799, 2013 U.S. Dist. LEXIS 69999, at *17-18 (S.D. Cal. May 16, 2013); *Canfield v. Atlas Storage S. Bay, LLC*, No. 12CV1574-IEG(WVG), 2012 WL 4062479, 2012 U.S. Dist. LEXIS 131543, at *4 (S.D. Cal. Sep. 13, 2012).

Additionally, the Court notes that the Honorable William Q. Hayes recently considered whether another California statute, Code of Civil Procedure section 425.14, applied in federal court.[9] *See Eason v. Roman Catholic Bishop of San Diego*, 414 F. Supp. 3d 1276 (S.D. Cal. 2019). Judge Hayes found that section 4215.14 was "procedural in nature and not applicable in federal court." *Id.* at 1286. In doing so, Judge Hayes approvingly cited a case that found section 425.14 was "no different than the 'procedural'

---

[9] Section 425.14 is nearly identical to section 425.13 except that section 425.14 requires court approval for punitive damage claims against religious corporations.

rule in section 425.13 of the California Code of Civil Procedure, which requires a party to obtain court approval before seeking punitive damages against a health care provider." *Id.*

Here, this Court sees no reason to depart from *Jackson* or the litany of subsequent California federal district court cases that have followed and applied *Jackson*. Further, section 425.13 is materially indistinguishable from section 425.14, which Judge Hayes has already found inapplicable in federal court. Accordingly, this Court finds section 425.13 is inapplicable in federal court, and Plaintiff need not meet its requirements to pursue a punitive damage claim here. Defendant's MSJ should be denied in this regard.

## IV.   CONCLUSION

This Court RECOMMENDS that Defendant's motion for summary judgment be GRANTED-IN-PART and DENIED-IN-PART, that judgment be entered in Defendant's favor on Claim One and Claim Three of the Third Amended Complaint, and that the case be closed given the resulting lack of remaining claims and defendants.

This Report and Recommendation is submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b).

IT IS ORDERED that **no later than August 18, 2020**, any party to this action may file written objections with the Court and serve a copy on all parties. The document shall be captioned "Objections to Report and Recommendation."

IT IS FURTHER ORDERED that any reply to the objections shall be filed with the Court and served on all parties **no later than August 26, 2020**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

DATED:  July 28, 2020

_____
Hon. William V. Gallo
United States Magistrate Judge

16-CV-2316-WQH(WVG)